In the Matter of the Estate of ADAM KRASNICKI, Deceased.

Surrogate's Court, Kings County, March 15, 1935.

*Martin Friedman*, for the administratrix, respondent.

*Blum & Jolles*, for the Polish Consul General.

WINGATE, S.   The basic issue in this proceeding for revocation of letters of administration is the validity of the marriage of the decedent to the respondent.

It is conceded that they were ceremonially married in 1893 by Father Sabrizmski at St. Stanislaws Church, Newark, N. J., and that they had six children of the union, all of whom are now living. The alleged invalidity is predicated on the claim that the decedent had previously intermarried in Poland with one Rozalja Pinskowski, that she is still living, and that such marriage was never in any manner dissolved prior to this death.

If this ceremonial marriage to the respondent was invalid, it would follow that he was a bigamist and had lived in adulterous relations with the respondent for approximately forty years, and that their six children were illegitimate.

The cogency of the presumption of the validity of a ceremonial marriage and of the legitimacy of the offspring of such a union is expressed with especial clarity by the Court of Appeals in its latest pronouncement on the subject (*Matter of Findlay*, 253 N. Y.

1, 8), where it is pointed out that " the presumption will not fail unless common sense and reason are outraged by a holding that it abides."

As this court noted in *Matter of Smith* (136 Misc. 863, 869), in its somewhat complete review of pertinent authorities, improbability alone will not break the cogency of the presumption, nor will an adverse result be reached by a balancing of probabilities.

The memorandum submitted by the learned counsel for the petitioner apparently fails to appreciate the full onus of the burden of demonstration which rests upon him in a case of this type. After a citation of authorities, none of which were cases involving questions of marriage or legitimacy, he deduces the rule that " where there is a similarity of names, plus a reasonable coincidence of other circumstances, there is a presumption of identity and the burden of showing that the identity does not exist is thrown upon the other party." While such may be the rule in the ordinary case, it is clearly not the law in a litigation of this type. Here, the person seeking to invalidate the marriage and bastardize the children who resulted therefrom, must prove every necessary link in her chain of evidence, including negatives. (*Matter of Smith*, 136 Misc. 863, 866.) No inference of identity from similarity of names or otherwise can here be indulged in favor of the petitioner, since any such favorable inference of fact is presently faced by the true presumption of the validity of marriage and the legitimacy of issue in the presence of which it shrinks into insignificance. (*Matter of Callahan*, 142 Misc. 28, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524.) " Proof — comprehensive and inevitable — is the only thing she can supply to satisfy the law." (*Matter of Biersack*, 96 Misc. 161, 177; affd., 179 App. Div. 916.)

Three and only three witnesses here testified, all being called by the petitioner. They were, in order, a daughter of the deceased, the respondent herself, and an employee of the Polish Consulate. Certain documentary evidence was also introduced, consisting largely of various certificates from Poland. Adverting first to the latter, it appears than *an* Adam Krasnicki was born in Nova Alexandria on December 10, 1859, his parents being Karol Krasnicki and Jozefa Krasnicki (*née* Cymbalinski). Rozalia Pinkoski was born at Czaplinow on February 16, 1861, her parents being Gotleb Pinkoski and Anna Dorothea Pinkoski (*née* Kryger). Between September 20 and October 2, 1881, *an* Adam Krasnicki of the parentage above noted married Rozalia Pinkoski of the parentage above noted. Between May 14 and 26, 1887, a male infant named Philip was born to this couple, who was married to Helena Steinke between September 11 and 13, 1913. This son was declared by

the Circuit Court of Lodz to have died on December 31, 1920. A certificate was also presented demonstrating that *a* Rozalia Krasnicki was alive on September 30, 1932, and one dated October 14, 1932, reading: " that the marriage of Adam Krasnicki and Rozalia Pinkoski which was entered into in the Evangelic Augburgian Parish in the year 1881, was not dissolved *in the Evangelic Augburgian Consistorial Court.*" (Italics not in original.)

One feature in respect to the birth record of the son Philip is worthy of note. Whereas it recites that this child was born in May, 1887, it nevertheless certifies that its father, Adam Krasnicki, appeared and executed the record at 10 A. M. on " October 1/13 in the year of 1892."

The next step in the attempt to connect the Adam Krasnicki of these records with the present decedent was by means of an application for a passport, produced from the files of the Polish Consul in New York. This indicates that an application for such a document was made by a man who used the name of Adam Krasnicki, who gave his date and place of birth as Warsaw, December 24, 1859, his father's and mother's names as Karol and Jozefa (*nee* Cembalinski) and who stated that his wife's name was Rozalja (*nee* Pinskowski) but that she was " not alive." It further stated that the applicant had been in America since November 27, 1892, and that he resided at *34* Sheepshead Bay street, Brooklyn.

The employee of the Consul's office testified that " the passport was sent to him on March 9, 1920, by mail as marked here." That this was not proper proof of the fact is demonstrated by the testimony of the witness that he, himself, did not become connected with the office of the Consul General until September, 1920, after the event occurred. This feature of the matter is, however, without any particular importance, since the signature to the passport application was in no wise identified as being that of the decedent.

The total of the pertinent demonstration up to this point is that an individual by the name of Adam Krasnicki was married to this woman Rozalja in Poland in the year 1881 and that such marriage had not been dissolved " *in the Evangelic Augburgian Consistorial Court* " in Warsaw prior to October 14, 1932, and that some unidentified person representing himself to be named Adam Krasnicki, to reside at *34 Sheepshead Bay street*, Brooklyn, and to have antecedents corresponding to the same individual, applied to the Polish Consul for a passport in 1920.

The demonstration now jumps to the year 1928, when it appears that an Adam Krasnicki sought permission to leave all of his property to Marshal Joseph Pilsudski. In view of the protest of

the respondent and her daughters against this action, it has been clearly demonstrated that this Adam Krasnicki and the decedent were the same person.

The link between the two persons bearing or using this name was attempted to be established by a tin-type photograph and the testimony of the witness Mika from the Consul General's office. The court was under the impression that the testimony had demonstrated that this photograph was identified by the witness as that of the alleged Adam Krasnicki who had applied for the passport. The record, however, fails to substantiate this. The sole testimony on the subject begins at page 29, and reads: " Q. I show you petitioner's Exhibit 1 for Identification and ask if you recognize the man who appears on that? A. This picture is Mr. Adam Krasnicki but it was taken many years before. Q. Do you recognize who that picture is? A. Yes positively. Q. By the Surrogate: How do you know it is his picture? A. Because I saw him later. His face — the nose is similar to him. When I saw him he had his beard cut back."

The witness then categorically stated that he " saw Mr. Krasnicki for the first time in the year 1927."

The testimony accordingly indicates nothing except that in his opinion this tin-type, the genesis of which is undisclosed, presented a resemblance to the man whom he met for the first time in 1927. This does not advance one iota the identification of this 1927 Krasnicki as the person who applied for the passport in 1920, and, a fortiori, does not establish that he was the Krasnicki who married Rozalia in 1881.

The photograph shows a gentleman of patriarchal appearance with flowing white whiskers extending almost half way down his breast, whom the respondent and her daughter declined to identify as the decedent. There is a note of irony in the assigned reason for identification by the employee of the Consul of a similarity of noses, since in the photograph the only feature which appears clearly discernible, as a result of the elaborate hirsute adornment, is the nose. As the court views this depicted feature, however, it presents no such peculiarity as to render plausible its identification after the lapse of six or seven years.

The description of the individual in the passport application, which presumably was checked at the time, reads: " height — middle; eyes — blue; nose — average; mouth — proportional; hair — chestnut; face — round; forehead — high; special marks — none."

This description is impossible of reconciliation with the likeness in the photograph with its chief feature of a long flowing white

beard, which characteristic would appear improbable of oversight by the person checking the description.

There is, therefore, a complete failure of identification of the 1927 Krasnicki with the individual of 1920.

Further discrepancies appear in the fact that the husband of Rozalia was definitely placed in Warsaw on October 1–13, 1892, whereas the testimony of the respondent, adduced by the petitioner, and in no wise contradicted on the record, was to the effect that she married the decedent in February, 1893, and had known him for a year prior to that time, presumably in this country, since she had been here for a year and a half when she met him. Obviously, if this testimony was true, and for present purposes it must be so accepted, the decedent was in this country as early as February, 1892, and the two Adam Krasnickis could not have been the same individual, since one could not be in Warsaw and this country simultaneously.

Finally, it is shown that the decedent had his bungalow at 5254 Sheepshead Bay road, whereas the residence of the passport individual is given as Sheepshead Bay *street;* the number is 34, and the decedent has not been placed in any such location.

So long as a theory is reasonably deducible from the showing of the record compatible with the validity of the respondent's marriage and the legitimacy of the children of the couple, the petitioner cannot prevail. Many such theories are here available, a few of which may be noted by way of example: *First,* the " Adam Krasnicki " who applied for the passport was a different individual from the decedent; *second,* if the same individual, he was divorced from or divorced Rozalia at some time either before or after his marriage to the respondent. In this connection the certificate introduced in evidence respecting the non-dissolution of the marriage is worthless as proof, since it certifies merely that the marriage was not dissolved " in the Evangelic Augburgian Consistorial Court." It is also probable that it was not dissolved in the divorce court of the State of Chihuahua, but this does not demonstrate that a divorce was not in fact obtained somewhere else; *third,* if the two Adam Krasnickis were really the same individual, there is absolutely no proof to demonstrate that Rozalia, the wife, did not die at some time between 1887 and 1892 or even later, since there is no competent demonstration before the court that the person who now claims to be the prior wife is actually the same person whom some Adam Krasnicki married in 1881 and who is last shown to have been alive in 1887 when the now deceased son Philip was born.

Still other possibilities suggest themselves from the record, but the foregoing will suffice to demonstrate that the petitioner has failed to exclude every reasonable hypothesis which would justify the court in its upholding of the validity of the marriage of decedent and respondent and the legitimacy of their six children. In consequence of this failure, the existing rules of law require that the issue be determined adversely to her.

Enter decree on notice.